## WHITE v. BRAME & CARTER.

### No. 1883.

Court of Appeal of Louisiana. First Circuit.

Oct. 5, 1938.

Roland C. Kizer, of Baton Rouge, for appellant.

Chas W. Wilson, Jr., and Leslie A. Fitch, both of Baton Rouge, for appellee.

DORE, Judge.

Plaintiff instituted this suit to recover of the defendants, a commercial partnership, and of the individual members thereof in solido, the sum of $313, plus $25 a week penalty from July 31, 1937, until paid, and the sum of $100 as attorney's fees under Act No. 138 of 1936.

For a cause of action, plaintiff alleges that on or about May 24, 1937, he was employed by the defendant partnership as sales manager and automobile salesman upon a commission basis of seven per cent on automobiles sold by him and under a guaranteed salary of $25 per week; that as such he worked for the said defendant from May 24, 1937, until July 31, 1937; and that between said dates the defendant paid him the sum of $37 as part payment of his guaranteed salary; and that regardless of repeated demands for payment, to no avail, he resigned on July 31, 1937, and demanded payment of his salary in full; that, on account of the refusal of defendant to pay his salary in full at the time of his discharge or resigning, defendant is further liable to him for $25 per week as a penalty until he is paid; and that he was forced to employ an attorney at a cost of $100, and for which defendant is also liable.

In the alternative, plaintiff avers that in the event the court should find that he was not employed under a guaranteed salary of $25 per week, then he avers that, between said dates of May 24, 1937 to July 31, 1937, he sold six automobiles at a total net price of $3,200, and that his commission thereon amounted to $224, and for which defendant was liable. His prayer is in accordance with his petition.

Defendant answered and denied that they entered into a contract with plaintiff guaranteeing him a salary of $25 per week, but admit that plaintiff was permitted to hang around their place of business and that they agreed to pay him a commission on any cars sold to customers produced by plaintiff; that during said time, two cars were sold to customers whom plaintiff had developed and produced on which he was entitled to a commission of $46, and that they paid plaintiff $50, or an overpayment of $4.

Judgment was rendered for plaintiff in the sum of $155 for balance due on the salary, plus attorney's fees of $50. Defendants have appealed, and plaintiff has

answered the appeal, asking that the judgment be increased to $326.98.

Plaintiff claims that the agreement by which he was to sell cars for defendant on a commission basis with a guaranteed weekly salary of $25 was entered into about May 21, 1937, with Mr. Brame, one of the defendants, in a restaurant in Baton Rouge and in the presence of two other witnesses, Mr. Thompson and Mr. Vernado.

The substance of the testimony of the plaintiff, Thompson and Vernado on the question of the contract is that these three were on the street together when Brame came up from the other side and told plaintiff that he (Brame) was looking for him; that Brame invited the three into a restaurant for a drink, and that they all sat down in a booth together and had coffee; that Brame offered plaintiff a guaranteed salary of $25 per week and a commission on cars that he sold for them, and that plaintiff agreed to the proposition and that the two shook hands to bind the agreement.

Brame not only denies entering into such an agreement, but even denies going into this restaurant and treating them to a drink. Brame and his partner Carter testified that plaintiff came to their place of business and asked them to let him hang around their place and sell cars to such prospects as he might work up; that they consented to this and that they sold two cars to customers developed by plaintiff and for which he was paid more than enough to cover his commissions.

It is obvious that the decision of this case depends on a question of fact which involves the credibility of the witnesses and the weight to be given their testimony; and we are not unmindful of the rule that on question of facts, great weight must be given to the conclusion as reached by the trial judge.

Regardless of the fact that plaintiff has alleged that he was hired as sales manager, yet upon being questioned about this employment, he denied it. It must be presumed that he had fully informed his attorney as to his status and his demand and that his attorney drew up his petition in accordance with such information. Again, he alleges that he made repeated demand upon his employer for his payment, yet the record is barren of such proof regardless of the fact that the Judge in his reasons for judgment states that "Although he made frequent demands for the salary due under the contract of employment." Both defendants stoutly deny that plaintiff ever demanded a weekly or monthly pay; they are not contradicted in this, not even by the plaintiff. It strikes us very forcibly that had plaintiff been employed upon a guaranteed weekly salary of $25, he would have demanded his pay weekly and his failure to do so is conclusive that such was not the case.

Another significant fact as developed by the evidence is that no automobile dealer in Baton Rouge employs its salesmen by the week, with or without a guaranty, but the general rule being solely upon a commission basis. The evidence is to the effect that only recently one of the dealers employed its salesmen on a monthly guaranty salary, and those salesmen are all experienced salesmen. This evidence must be the basis of the error committed by the trial judge when he rendered judgment in favor of plaintiff for a monthly guaranteed salary. It must be remembered however that plaintiff had had no experience as an automobile salesman and that the evidence preponderates to the effect that all such inexperienced salesmen are employed upon a commission basis. These defendants were experienced salesmen and had just started a new business with a rather limited capital; and it is rather hard to believe that they would be the first to depart from the usual custom of employing inexperienced salesmen by the month or by commission, and employ their salesman upon a weekly guaranteed basis. The testimony of these defendants is to the effect that they did not need any salesman, but only promised plaintiff to re-imburse him a commission upon cars sold to prospects developed by him. Due to their past business experience, we attach great weight to their testimony.

Another circumstance which we feel should have been considered by the lower court is that plaintiff worked during the month of July for a man named Crawford who ran a bar on Third Street in Baton Rouge. Plaintiff contends in his argument that this was night work, yet the uncontradicted testimony of witness Crawford is that plaintiff came to his place of business at all hours after ten o'clock in the morning.

We are not much impressed by the testimony of plaintiff. Plaintiff impresses us as a man somewhat inclined to exaggeration. Besides his allegation of being sales-manager and his refutation on the stand, upon being questioned about his former employments, he claims credit for having "practically built the American Bitumul Asphalt Plant in Baton Rouge"; his own counsel had to warn him not to "ramble too much". In his attempt to prove his claim that he had sold, within the time of the alleged employment, six automobiles of a net price of $3,200, upon which he should receive a commission of $224, he named the purported purchasers and then attempted to corroborate his testimony by the calling of the purported purchasers as witnesses, the first one of which was a Mr. Scarbrough. Mr. Scarbrough repudiated the plaintiff and also testified that plaintiff had admitted lying to him. The other purported purchasers then were not called as witnesses by the plaintiff but later on in the trial of the case, the defendants offered their testimony, and they likewise repudiated the claim of plaintiff.

We are not very much more impressed with the testimony of the two witnesses, Thompson and Vernado, by whom plaintiff sought to prove his employment on a weekly guaranty salary of $25. If we accept the testimony of plaintiff as to the date and hour of this presumed meeting of the four, that is, plaintiff, his two witnesses and defendant Brame, there is abundant testimony which raises the suspicion that these witnesses could not have been present. The time sheets of these witnesses show that these witnesses had worked that day and were far enough removed from the meeting place at that time that it was an impossibility for their being present. Thompson testified that he had eaten dinner up town on that day, yet his time sheet shows that he had worked from seven o'clock in the morning to three in the evening. Thompson characterizes the meeting as "just a general bull session"; and that White, upon being tendered the employment, "hemmed and hawed around a bit before he accepted", placing the acceptance at the table in the restaurant; while Vernado would want to leave the impression that the proffered employment was carried with dignity and that White did not hesitate to accept the proposed employment. There is much more that can be said wherein the testimony of the two witnesses is in conflict, but we do not see the necessity of going any further.

Therefore, we are of the opinion that the plaintiff has failed to prove that he was employed on a weekly salary guaranty of $25. We now pass to his alternative demand, claiming commission on six cars amounting to $224.

As previously stated, plaintiff attempted to prove this demand by testifying that he had sold six cars, naming the purchasers. He then proceeded to call these purchasers as witnesses but, upon being repudiated by the first witness, he did not go any further. However, defendants called as witnesses some of these purchasers named by plaintiff, and they, like Mr. Scarbrough, testified that plaintiff had had nothing to do with the sale or purchase.

Two cars are admitted to have been sold to prospects developed by plaintiff. But defendants have satisfactorily proven that plaintiff has been paid his commissions thereon. In short, we fail to find wherein plaintiff is due any more than that which he has been paid.

Again we say that we are not unmindful of the rule that great weight should be given to the conclusions reached by the trial judge, but we feel that in this case the trial judge manifestly erred in adopting the testimony of the plaintiff and his witnesses without giving any consideration whatever to that of the defendants and their witnesses and especially the surrounding circumstances as outlined above. We regret that we must disagree with him.

For these reasons, the judgment appealed from is annulled, reversed and set aside, and it is now ordered that there be judgment in favor of defendants and against plaintiff, dismissing plaintiff's suit at his costs in both courts.

OTT, J., dissents, being of the opinion that the record does not justify a reversal of the trial judge on purely a question of fact.